Per Curiam :
The plaintiff moves for a new trial and assigns error of fact in that (1) as to the movement referred to in Finding III the court did not find that it “ rendered its bills at the rate of $4.90 per capita in accordance with Washington adjustment agreement; (2) in stating, in Finding IV, that the accounting officers, in making settlement for such transportation, “ adopted said party rates as a proper basis therefor.”
Finding III is said to be “ absolutely correct ” with the exception of the fact that the court “ overlooked ” the fact that the bills were rendered in accordance with Washington adjustment agreement. The plaintiff’s error is in assuming that the court overlooked anything in connection with this case.
The sole basis, apparently, of the plaintiff’s contention with reference to the application of the Washington adjustment to this movement is found in a report from the office of the Auditor for the War Department and in a document headed “ Clerk’s statement of settlement ” and *300 signed with the name of a clerk in that office. In this statement, with reference to these movements, it is said:
“Bills No. 2438-2480 and 2693 cover service between Pensacola, Fla., and New Orleans, La., payment for which the company claims on basis of two (2f) cents per mile net in accordance with Washington adjustment agreement. Settlement is made on party-rate basis two cents per mile per capita authorized in L. and N. Circular No. 5425, effective June 4, 1908, subject to land-grant deduction of 8.775% net (total miles 245, land-grant miles 43).”
This statement with reference to the basis of the plaintiff’s claim can not be regarded as weighty, since it is in conflict with the plaintiff’s theory elsewhere presented with reference to these movements, is susceptible of explanation, and is not sustained by the bills themselves. An explanation is found, in the first place, in the fact that for the distance involved in these movements the mileage rate under the plaintiff’s party-rate tariff and under the Washington adjustment agreement was the same, namely, 2 cents per mile. The statement of the clerk is not verified by the bills themselves, since the bills themselves do not claim payment under the Washington adjustment. The movements were billed simply at $4.90 per capita. It is further important to note in this connection that in its amended petition with reference to these movements the plaintiff says:
“To these movements petitioner, by its proper officers, agreed that the party-rate tariffs, described in paragraph III hereinbefore, should apply, and its bills against the United States with respect thereto were computed at the rates so fixed.”
Paragraph III referred to is as follows:
“At the times hereinafter stated there were in effect on petitioner’s said lines tariffs of special rates applicable to passengers in parties of ten or more traveling on private account. A general basis, subject to exceptions stated, was fixed by said tariffs of two (2) cents per mile for "each passenger.”
In plaintiff’s amended request for findings of fact with reference to these movements is the following:
“ To these movements the claimant, by its proper officers, agreed that the party-rate tariff described in paragraph *301 Ill hereinbefore should apply, and its bills against the United States with respect thereto were computed at the rates so fixed; but in the payments made for said movements the accounting officers of the United States deducted, with respect to each passenger carried, fifty (50) per cent of so much of the rate as accrued on said land-aided part of the route. Amount of the deductions so made was $199.09.”
In a stipulation filed in this case is the following paragraph :
“That in the year 1909 claimant railroad company transported five bodies of United States troops between New Orleans, in the State of Louisiana, and Pensacola, in the State of Florida, on transportation requests specifying a special rate of $4.90 per capita; that said claimant rail-l'oad company presented its bills for said transportation at said rate, which was the Washington adjustment rate. In making settlement for said transportation the accounting officers of the United States applied Louisville & Nashville Eailroad Company’s Circular No. 5425, copy of which is attached hereto as above stated, and made a land-grant deduction for 42 miles of the whole distance, that being the number of miles of land-grant road between said terminals, amounting, for said five movements, to $199.09.”
If there is any significance in any of the phraseology used in this paragraph of the stipulation it can be found only in the words “ which was the Washington adjustment rate.” That is a statement of a fact which is true, but that fact.is equally true with reference to plaintiff’s party rate tariffs set up in Circular No. 5425, and the words can not be given more meaning than the facts justify. It is not said here or otherwise shown that the company made its claim under the Washington adjustment. _In paragraph 1 of said stipulation, carrying into the record certain tariffs applicable to the various movements involved in this suit, is included “ and also, Louisville & Nashville Eailroad Co. Circular No. 5425, providing local and joint passenger tariff one-way party fares, effective June 4, 1908.”
In the plaintiff’s supplemental brief it is said:
“The facts agreed upon in the third paragraph of the stipulation justify the finding by the court in the identical language used in the amended request, page 134. The ques *302 tion of allowance in the judgment rests upon the determination of the proposition of whether or not the Government is entitled to party rates.” [Italic ours.]
The amended request on page 134, referred to, is the request quoted from aboye, wherein the court is requested to find that to these movements the claimant by its proper officers agreed that the party rate tariffs described in Paragraph III, hereinbefore, should apply. It is further stated in plaintiff’s supplemental brief:
“ Referring now to the claimant’s amended request, page 133, and the defendant’s objections, pages 141-142, the agreement, paragraph 1, admits Louisville & Nashville Circular No. 5425 as evidence in the case. This circular, which became effective June 4, 1908, shows that party rates on the basis of 2 cents a mile were extended to parties of ten or more.
“These were not, we contend, open to the Government for the reason that the Goverwrmnt did not pay cash. This question, we insist, is res judicata.” [Italics ours.]
This paragraph from the defendant’s brief refers specifically to the plaintiff’s Circular No. 5425. This reference to its amended request, on page 133, is to the request quoted above to the effect that there were in effect on claimant’s lines tariffs applicable to passengers in parties of 10 or more “traveling on private account.” The defendant’s objection to that finding was to the words quoted, “ traveling on private account.” Tariff 5425 in the record contains no such limitations, it contains no stipulation with reference to payment of cash, but is a straight party rate tariff prescribing-a rate of 2 cents per mile.
In the face of these facts and the former contentions of counsel it seems useless to indulge in any argument. Counsel’s case was clearly predicated upon the party rate tariff,, extended by Circular No. 5425. He stated specifically that “ the question * * * bests upon the determination of the proposition of whether or not the Government is entitled to party rates,” coupled with the contention that “these (the party rates set up in Circular 5425) were not, we contend, open to the Government for the reason that the Government did not pay cash.” The plaintiff’s theory was thus *303 so clearly defined that to permit the amendment of the finding as requested as the basis for the plaintiff’s now presented theory is to reopen the case for the sole apparent purpose of permitting a complete change in the plaintiff’s theory of his case. If he has mistaken his rights, the fault is with him and not with the court.
We are unable to follow the reasoning of plaintiff’s counsel in support of his contention that the court erred in stating in Finding IV that the accounting officers, in making settlement for the transportation there referred to, “ adopted said party rates as the proper basis therefor.”
.Plaintiff alleges in its amended petition that—
“To said movements also, petitioner, by its proper officers, agreed that said party rate tariffs should apply, and its bills against the United States with respect thereto were computed at those rates; but in the payments made for said movements the accounting officers of the United States, although they adopted said party rate as bases, made deductions of fifty (50) per cent, &c.” [Italics ours.]
In its amended request for findings of fact with reference to these movements the same language with reference to the basis of payment adopted by the accounting officers is used. In the stipulation filed herein it is said, with reference to each of these movements, that the accounting officers used as a basis Louisville & Nashville Railroad party rate Circular No. 5425. In the face of these facts we are at a loss to comprehend the basis of plaintiff’s objection to that part of the finding, unless it may be inferred from statements in his brief that the contention is that the accounting officers did not apply party rates to these movements because they did not include in their computation of rates applicable the “ proper arbitrarles.” If this is the basis of the contention it certainly does not call for any amendment of the finding. We assume that if, in connection with a tariff authorizing party rates of 2 cents per mile, there are to be included in the computation of the resultant rate any proper arbitrages, that the mileage computed at 2 cents per mile, with the arbi-traries added, makes the applicable rate, and it is properly still to be denominated a party rate.
*304 But the question is further concluded by the record. As an illustration of what the auditor did, we take the movement under transportation request 78437, Montgomery to Lytle, via Birmingham and Chattanooga. Plaintiff says the correct computation on the basis of party-rate Circular No. 6425 is—
Montgomery to Lytle, 240 miles, at 24_$4. 80
Birmingham transfer_ . 80
Chattanooga to Lytle, local_ . 28
Total one way_ 5. 38
There is an immaterial error in stating the mileage as from “Montgomery to Lytle.” It should have been stated as from Montgomery to Chattanooga. The auditor computed—
Montgomery to Birmingham, 97 miles, at 24_$1.95
Transfer_ . 30
Chattanooga, 143 miles, at 24_ 2. 90
Lytle- . 28
5.43
There was an evident mistake, easily to be accounted for if important, in computing 97 miles as $1.95 instead of $1.94 and 143 miles as $2.90 instead of $2.86, a difference of 5 cents, which deducted from the total makes the exact rate now computed by plaintiff, and the same arbitraries are included. With this rate so computed as the basis, the auditor computed the land grant and determined a net rate of $3.33, on the basis of these party rates, and applied it in the settlement. The reason for the apparent discrepancy will appear later in the discussion.
The plaintiff alleges error of law (1) in that the court did not render judgment for the plaintiff on account of the movements set up in Finding III, in the sum of $199.09, and argues the proposition upon the theory that the rate quoted for these movements was the Washington adjustment rate, which contained a provision to the effect that the rate was net and not subject to further land-grant deductions. What has been said already on this subject in connection with the discussion of the alleged error of fact in the finding seems to be amply sufficient. To determine the case now upon the *305 theory that the Washington adjustment is applicable to this movement is to determine it upon a theory entirely different from that presented by the plaintiff and indicated by the quotations already made from the final brief. The contention there was clearly and explicitly upon the proposition that the United States was not entitled to a party rate because it did not pay cash. In the original opinion it was not regarded as necessary to discuss the question at length, and it was simply held that after the railroad company had accepted the transportation requests and furnished the transportation and rendered its bills that :.t was too late to raise any question under the theory that the rate was only available when cash was paid. The question might have been been discussed from other standpoints, but it was not then deemed necessary and is not now regarded as necessary. If counsel was in error in his explicit statement as to the issue presented for the determination of the court, such an error can not furnish ground for a new trial.
With reference to the movements referred to in Finding IV, it is contended that there was error on the part of the accounting officers in the determination of the rate applicable to each of these movements, and that in consequence thereof there was an underpayment in addition to the land-grant deduction for which plaintiff already has judgment. Attention was called to the fact, in the original opinion herein, that the parties had attempted to stipulate the facts in this case, but had failed in this respect to reach an agreement, and it was suggested that the plaintiff had not pointed out the respects in which the auditor’s computation of the rate was erroneous, and had left the court to find its way out, as best it might, by means of complicated tariffs submitted in evidence.
Counsel in his brief says the court has allowed 2 cents per mile without land-grant deduction for these movements, and that it should have allowed 2 cents per mile and “ proper arbitrarles” without land-grant deduction, and that settlement at any other rate is erroneous. If it appeared that the auditor was in error in his computation, in that he figured a *306 rate as to each movement on the basis of 2 cents per mile for the mileage involved and failed to include arbitrarles which it was shown were properly to be included in completing the rate, the question would have at least been simplified, and there would be for ascertainment only the amount of the arbitrarles which the auditor in each instance had failed to include in his rate computations. However, an examination of the comparative figures in the auditor’s settlement, and in the statement by counsel for the plaintiff as to the proper building up of these rates, does not sustain the contention that the difference is because of failure to include arbitrarles. For example, in his computation is his supplemental brief, designed to show the proper rate applicable to the movement on transportation request No. 17437, from Montgomery to Lytle, counsel computes 240 miles at 2 cents per mile, $4.80, and adds Birmingham transfer 30 cents and Chattanooga to Lytle local 28 cents, and ascertains the correct rate to be $5.38. The auditor’s settlement shows that he applied a rate of $5.12. It is plainly apparent that the discrepancy is not to be accounted for on the face of the figures upon the theory of the exclusion of these arbitrarles. The arbitrarles included are 58 cents which, deducted from the total rate, would leave $4.80, whereas the auditor has allowed a rate of $5.12, and it is to be observed also that the omission of either one of the arbitraries singly from the plaintiff’s computed rate will not result in producing the auditor’s rate.
But, aside from this, it appears in the record that the auditor, in his computations of rates applicable to all the movements in question, included in each case the same arbi-traries for which counsel contends.
Somewhat in conflict with our own ideas as to our duty under the circumstances, we have labored industriously to discover the real trouble in this case. The fact that it is not to be found where plaintiff’s counsel says it is sustains our original view of the matter to the effect that we have not been furnished with the facts and our attention directed to them as should have been done if we are to determine the errors and correct them by our judgment. We would be justified on that account in peremptorily denying relief, and *307 we shall incline more strongly to that course hereafter under such circumstances; but we recognize the fact that the court has heretofore countenanced to some extent deviations from the requirements of strict practice, and we assume our part of the consequent burden. Our attempt will be to solve the problem, if the answer can be found within the record. If not, the result must follow the fault.
Eeferring to the per capita rate used in the settlement for these movements, we spoke of it in the original opinion as the rate or computation of the accounting officers. That was correct to the extent that it was the rate used by the accounting officers as the basis of the final settlement, the rate which produced for each movement a total amount equal to> the sum of the auditor’s allowances and resultant disallow-ances on account of land grant. But it is apparent from a. further investigation of the record that it was incorrect in so far as it implied that it was a rate resulting from a computation by the auditor. It was, iñ fact, in each case the exact rate at which the plaintiff made claim for the service. In the auditor’s settlement it is the rate “ as claimed,” corresponding in each case with the rate appeáring in the claim of the company. It appears further from the record that the auditor as to each movement made a computation of rates substantially on the same basis now claimed by the plaintiff, using the same mileage, except fractions, and the same arbitraries, but he properly limited his settlement to the amounts then claimed in the company’s bills. He ascertained the proportionate part of his own rate which he determined to be net and the part which he determined should be withheld as land grant, applied his net rate to determine the allowance and disallowed, as land grant, the difference between that amount claimed by the com'pany. His dis-allowance on account of land grant was thus less than it would have been had he applied his own rate to the settlement without regard to the rate claimed by the company.
The question, then, is not whether the plaintiff is entitled to recover further because of the application of erroneous rates by the auditor in his settlement, over plaintiff’s protest, but is whether the plaintiff is now entitled to claim and *308 recover a greater compensation than it originally claimed and received, eliminating, of course, for the purpose of this question the matter of land-grant deductions which have been determined in the plaintiff’s favor.
It is not averred in the petition that the railroad company, through any misapprehension of the facts or of its legal rights rendered its bills at a mistaken rate, and that theory of the case is nowhere presented as a basis of recovery. Indeed, the variance in all the claimed rates from the rates now asserted as proper indicates that the company proceeded upon some definite and uniform theory in determining the rates it claimed for each movement. What that theory was does not fully appear from the original record. The auditor said in his settlement that “the railroad company claims settlement on Washington adjustment basis,” a conclusion the correctness of which a computation based on all the data available to us apparently failed to demonstrate. The transportation requests called for the transportation “ at open rate available.” The railroad company determined a rate and rendered its bills according^ and, however, it determined it, the presumption to be indulged is that the rate it fixed was a rate available to the United States for this transportation. If perchance it conceded a lesser rate than it might have claimed it was a concession it had a right to make to the Government, and it can not be permitted to repent of its liberality. Even upon the theory, if averred, that it was mistaken as to its rights and through such mistake failed to claim the rate now asserted to be correct, it is difficult to comprehend upon what proper legal theory, in the fact of the apparent facts, it could now be permitted to open up the settlement made for the purpose of applying a different rate.
But it is to be observed further that if we were to eliminate these questions and undertake to determine the amount -due the plaintiff on its present theory as to the applicable rate we could only partially dispose of the case. We could accept the stipulation as to mileage between the points named, and we might conclude to accept as correct the arbi-traries used in plaintiff’s computation of rates. But only a *309 minor part of the movements were over the routes upon which plaintiff’s computations are based and as to which we would be in possession of mileage and arbitrarles. For example, plaintiff computes the rate as to the movement on request 118025 the same as that on 78487. The movement on 78487 was through Birmingham and Chattanooga, while that on 118025 was by a different route, not through Birmingham and Chattanooga, and presumptively free from those arbitrarles, and as to which we are not furnished the facts.
It appears that the company in rendering its bills applied the same rate to movements not through Birmingham and Chattanooga as it did to movements through those points, but we can not assume that in determining a party rate by a specified route we are to apply the party rate resulting from the mileage and arbitrarles applicable to a different route.
But, while not absolutely essential to the determination of this question, it has seemed to us very desirable that we should be in possession, as a part of the record, of all the facts available as to the rate claimed by the company, to the end that, if possible, there be no occasion either for speculation or controversy, and we have made a further call on the Treasury Department, on our own motion, for any available information in the office of the Auditor for the War Department showing the basis of the rates claimed by the company for these movements and for any correspondence on file bearing on the question. The auditor has responded and the call has not been fruitless. We have in the record now satisfactory evidence that the plaintiff claimed for this service Washington adjustment rates and that the rates claimed were Washington adjustment rates as usually computed. The report shows the method of computation. The mileage used, authority for which is given, differs in most instances by one mile from that stipulated. The Birmingham transfer is presumably not included. Very properly it would seem that on a troop movement not involving the usual transfer of passengers at Birmingham it should not be included. The use of a 30-cent local is ac *310 counted for by the probability that the company used the Fort Ogelthorpe instead of Lytle local, as that point was probably the place of detraining.
But if there is any fault in the theory or in the conclusion from a mathematical standpoint, all doubt is removed by the statement in a letter of date June 14, 1911, from plaintiff’s auditor of receipts to the chief quartermaster at Atlanta, in which, with reference to these movements (bill No. 3086), it is said:
“ You will also find attached voucher for $4,140.79 issued in settlement of passenger transportation of various items covering the movement of Alabama State troops from various stations to Lytle, Ga., and return, and included in our July, 1910, freight bills Nos. 3085 and 3086. This voucher is respectfully declined, owing to our traffic department deciding we can not accept the net cash rates as applied by you on this voucher in settlement. They contend that the Washington adjustment rates should be used and as charged in our bill.
“In view thereof, will you kindly transmit same to the Auditor for the War Department for settlement, stating our exceptions thereto and advising us what action will be taken by you relative to same.”
The Washington adjustment was an available rate for movements of State militia as well as United States troops. At the time these services were rendered and for many years theretofore and up to the decision of this court in the Alabama Great Southern ease, May 18, 1914, land-grant deductions were applied to movements of State troops. The 'Washington adjustment contained a provision that it was net and not subject to further land-grant deductions. The company declined settlement at the hands of a quartermaster on another basis involving land grant and insisted on the Washington adjustment. It went to the auditor with its claim on Washington adjustment basis. That rate was to its advantage at that time because of the condition therein as to land-grant deductions. The holding in the Alabama Great Southern case deprives that rate of any advantage in that respect over any other rate in that land-grant deductions are held not to apply to State troops, but that condition brought about by a subsequent decision *311 can certainly not serve to permit the company to now claim an additional compensation on a different basis than that on which it, to its own then advantage, predicated its claim..
In connection with this detailed and careful consideration of the case we have had occasion to reexamine the figures entering into the judgment of the court as to land-grant deductions. As to these particular movements just under discussion we accepted the figures in the stipulation of counsel and included in the judgment $2,340.38 as the correct amount of the land-grant deducted. For these movements plaintiff had claimed a total of $7,117.36. It was paid $4,679.94. There was deducted on account of persons not making the return trip with their organizations $19.56. The amount therefore deducted on account of land grant was $2,417.86. The judgment included for these movements $77.48 less than was properly due. For the purpose only of correcting this error Finding IY will be amended by substituting $3,806.67 for $3,729.19, the judgment heretofore rendered in the sum of $3,729.19 will be set aside and in lieu thereof plaintiff will have judgment for $3,806.67.
The motion for new trial will be overruled.